FILED

JUL 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JAMES ELMER GROSS, SR *#2736/-037*

*USP-BIG SANDY*
*POB 2068* PLAINTIFF
*INEZ, KENTUCKY 41224*

V.

Case: 1:08-cv-01246
Assigned To : Kennedy, Henry H.
Assign. Date : 7/18/2008
Description: Pro Se Gen. Civil

HARLEY G. LAPPIN - DIRECTOR OF THE

BUREAU OF PRISON

DEFENDANT (1)


HARRELL WATTS - ADMINISTRATOR OF

National Inmate Appeals

DEFENDANT (2)

_____


COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE

EIGHTH AMENDMENT BY A FEDERAL PRISONER FILING A BIVENS

ACTION.

RECEIVED

JUL 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT
_____

Now comes James Elmer Gross, Sr. this 29 day of June 2008,

appearing through pro se representation.  Plaintiff is

serving a federal sentence under the Racketeering Influenced

and Corrupt organization Act and Racketeering Conspiracy.

Plaintiff argue that the defendant federal prison officials,

violated the Eighth Amendment by their deliberate indifference
to plaintiff's serious safety needs and inhumane conditions of
confinement.

Plaintiff argues that he has exhausted the internal
"administrative remedy procedures" to no avail. Furthermore,
plaintiff argues that the procedure by which isolation
confinement was forced upon him was fundamentally unfair, thus
violating due process of law. The defendants improper means
of a remedy as to placing plaintiff in isolation confinement
for well over four years is disproportionate and thus run
afoul of the Eighth Amendment. Plaintiff argue that the
defendants only means of a remedy amounted to the infliction
of cruel and unusual punishment, due to the duration of the
isolated confinement, and prison officials failure to remedy
the situation. Plaintiff argue that the defendants has
exposed him to additional forms of punishment not authorized
by the criminal sentencing court. And as a result of it being
a punishment, it is subject to the Eighth Amendment standards,
which prohibits cruel and unusual punishments.

Plaintiff argue that prison officials have a duty to protect
prisoners from violance at the hands of other prisoners.
Therefore knowingly designating plaintiff to a prison that
houses a known group of inmates which pose a substantial risk
of harm to plaintiff serves no legitimate penological
objective any more than it squares with evolving standards of
decency. It is a concious and vindictive act of deliberate
indifference to plaintiff's safety needs and inhumane
conditions of confinement.

Plaintiff argue it is well established that Bivens claims are

best characterized as personal injury claims.

Plaintiff argues that the defendants Harley G. Lappin Director
of The Bureau of Prisons and Harrell Watts Administrator of
National Inmates Appeals, joined prison officials at U.S.P
Terre Haute and with prior prison officials who refused to
provide plaintiff with a safe and healthy enviorment, free of
inhumane conditions of confinement.  Plaintiff argue that the
defendants priosn officials continued refusal to provide
plaintiff with the relife he claims he is due constitutes a
"continuing wrong" to deny plaintiff his constitutional
rights, thus bringing this case within the "continuing tort"
doctrine.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S BIVENS ACTION COMPLAINT.

Plaintiff argue that the defendants Harley G. Lappin and
Harrell Watts prison officials aided in the transfer of
plainitff to U.S. Penitentiary Beaumont in Texas, with
knowledge of the fact that inmates from Baltimore city were
being housed there.  Despite knowledge that plaintiff was
wrongly depicted as an informant by inmates from the
Baltimore, Maryland area, and would be particularly vulnerable
to violent attacks and assaults by inmates from the Baltimore
Maryland area.  As a direct result of articles printed in the
Baltimore Sun Newspaper wrongly alleging that plaintiff worked
as an informant.  Plaintiff argues that as a direct reflection
of the defendants prison officials deliberately indifference
to plaintiff's safety needs.  Plaintiff has been subjected to
conditions of inhumane confinement, which seems to be the

defendants only remedy and the conditions amount to the
infliction of and cruel and unusual punishment.

Plaintiff argue the defendants Harley G. Lappin and Harrell
Watts joined in with prison officials at U.S.P. Terre Haute
who refused to take the appropriate measures to guarantee
plaintiff a reasonable amount of safety.  Plaintiff argue that
when the defendants Harley G. Lappin and  Harrell Watts
responded to the BP-11 Administrate Remedy #400634-A1, stating
"Our review of this matter reveals both the Warden and
Regional Director have adequately addressed your concerns".
Clearly indicates that the defendant joined in with other
prison officials, who after promising to provide a safe
enviorment, did with deliberately indifference transferred
plaintiff into an extremely unsafe enviornment.

First, plaintiff argue that the defendants prison officials at
U.S.P Terre Haute insidiously made him stay in "The Hole' well
over eightteen months without a transfer for several reasons.
(1) due to the fact that plaintiff refused to remain in
general population, but rather sought to limit the amount of
possible harm, which prison officials refuse adhere to, and
(2) because plaintiff utilized his rights to the
administration remedy process.  In an attempt to rmedy his
serious safety needs and inhumane conditions of confinement.
Plaintiff argue that the defendants actions in seeking to
retaliate because plaintiff deemed it appropriate to act upon
their neglect was repulsive.  Arguing that the defendants
never should have released plaintiff to general population
under the circumstances.  Moreover plaintiff argue that the
BOP should not have designated plaintiff to U.S.P Terre Haute

after the events that occurred in the prior three prisons.
The defendants arbitrarily with callous and malicious intents
transferred Plaintiff to one of the worst prisons in the BOP
with full knowledge that plaintiff would end up back in "The
Hole" as another act of retaliation.

Second, plaintiff argue an inmate is not safe from harm in
"The Hole", isolated confinement or administrative segregation
or what ever one may call it.  Due to the fact that when
correctional officers in "The Hole" need bed space they force
anyone in the cell with you.  And if an inmate refuse five
officers suit up like hockey players with shields and helmets,
beating an inmate unmercifully.  If the prison officials deem
it inappropriate for an inmate to function in general
population due to a possible threat or safety issues.  How can
an officer take upon themselves to just force any inmate from
general population into their cell.  An inmate is not safe
simply because they are in "The Hole", most inmates can
protect themselve from one other inmate to the point of
reasonable safety, but no one can protect him/her self from
an attack when they are sleep.  This exactly the type of
situations that occur when prison officials act with
deliberate indifference to the serious needs of an inmate.
Inmates have been stabbed while sleeping in their cells, while
using the toilet, in the reccreation cage and by two other
inmates in the same cell with them, simply because some inmate
said he was "Hot" or that he testified against someone.
Penitentiary do not have absolute safe conditions of
confinement, unless there are some single cell available.
Plaintiff argue that while at U.S.P Terre Haute he was placed

in cells with other inmates without proper screening of that
inmate.  Also that other inmates were forced in the cell with
him that was in "The Hole" for displainary reasons without the
proper screening.  Which caused an enormous amount of problems
and fights between plaintiff and other inmates.  Plaintiff
argue that many times he had to take it upon himself to assure
his safety by refusing a cellmate.  Thus, plaintiff received
several incidents reports for refusing to allow an inmate in
the cell.  Plaintiff was given incidents reports for refusing
a direct order, as a direct reflection of staff members
recklessness in attempting to place just any inmate in the
cell with plaintiff.  On one occasion an officer gave an
inmate a copy of the Special Housing Unit deention list which
states the reason each inmate is being held in "The Hole".
This act was extremely chaotic imates wer stabbed in the
recreation yard, beat up in there cell and ridiculed by other
inmates.  Plaintiff name was on that list as requesting
protective custody and notes were written to plaintiff's
cellmate by the inmates who had the list demanding that he
stab or fight plaintiff.  Rather the inmate just request to be
moved to another cell.  Plaintiff argue that there is no safe
place in "The Hole"and the prison officials are well aware of
this broadly proven fact.  Therefore, the defendants prison
officials placement of plaintiff in "The Hole" as a means of
protection failed to alleviate a significant risk of serious
harm.  Instead, resulted in inhumane conditions of
confinement.  Arguing that plaintiff was locked in a cell
twenty four hours a day for well over four years due to prison
officials own fallicies in designating plaintiff to prisons

that housed inmates from the Baltimore Maryland area.
Plaintiff argue that the defendant in this complaint nor Terre
Huate prison officials did not take the events and activites
which occurred in "The Hole" serious nor did they take steps
to prevent such situations from happening.

Third, that an inmate must rely on prison authorities to
respond to his safety needs: if the authorities fail to do so,
those needs will not be met.  In worst cases, such a failure
may actually produce physical torture or lingering death.
Plaintiff argue that he was transfered to U.S.P Beaumont and
placed in general population despite knowledge that the
penitentiary had a history of violent attacks and assaults by
inmates from the Baltimore, Maryland area and others.  Arguing
that defendants knew Beaumont inmates were dangerious due to
the fact that they inter change inmates on a regular basis,
therefore they are quite informed as to the actions and events
that take place there.  Immediately upon arrival plaintiff was
accosted by twelve inmates from the Baltimore, Maryland area
and threatened to be beat and stabbed if he remained in
general population.  Which ultimately caused plaintiff to be
placed in "The Hole" or isolated confinement.
Plaintiff argue that the defendant actions amount to a
deliberately indifferent to protect plaintiff's serious safety
needs and inhumane conditions of confinement, and thus a
violation of plaintiff's Eighth Amendment rights.

        Plaintiff seeks an injunction barring future
confinement in any penitentiary which house inmates from the
Baltimore, Maryland area.  The immediately removal from U.S.P
Big Sandy, or what ever U.S.P plaintiff might be located that

houses inmates from Baltimore, Md, compensatory and punitive
damages for, inter alia, subjecting plaintiff to cruel and
unusual punishment in violation of the Eighth Amendment by
jeopardizing plaintiff's safety, deliberate indifference to
plaintiff's serious safety needs and plaintiff's involuntarily
exposure to inhumane conditions of confinement which violated
plaintiff's Eighth amendment rights.

        Plaintiff argues (1) that he has a constitutional
right to be housed in a safe and healthy enviroment, (2)
defendants prison officials did act with deliberate
indifference to plaintiff's serious safety needs, (3)
defendants prison officials caused plaintiff involuntarily
exposure to inhumane conditions of confinement, (4) plaintiff
has a right to function in general population in a federal
prison without being subjected to a substantial risk of harm
from a known group of inmates, (5) and wihtout experiencing
inhumane conditions of confinement.

        Plaintiff argues that this case is based on two types
of conduct that are sufficiently egregious to create liability
under a Bivens action;  deliberate indefference to plaintiff's
exposure to conditions of confinement that are sure or very
likely to cause needless suffering and serious illness.
Helling v. Mckinney, 509 U.S. 25, 125 L.Ed.2d 22, 113 S.Ct
2475 (1993), and deliberate indifference to the seriuos safety
needs of prisoners, Estelle v. Gamble, 429 U.S. 97, 103, 50
L.Ed.2d 251, 97 S.Ct. 285 (1976).  see Ramos v. Lamm, 639 F.2d
559, 572 (CA10 1980), states that a prisoner need not wait
until he is actually assulted before obtaning relief.  As
respondent points out, the court of Appeals cases to the

effect that the Eighth Amendment protcts against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering and legion.

Plaintiff argue the Eighth Amendment protects against future harm to inmates is not a novel proportion.  The Amendment, as the Supreme court have said, requires that inmates be furnished with the basic human needs, one which is "reasonable safety."  See Deshaney v. winnebago County Dept. Social Services 489 U.S. 189 91989) 266, 269 at 200.  It is cruel and unusual punishment to hold convicted criminals in unsafe conditions.  It would be odd to deny relief to inmates who plainly prove an unsafe life threatening condition in their prison on the grounds that nothing yet has happened to them.  The Court of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event. Two of them were cited with approval in Rhodes v. Chapman 452 U.S. 337 (1981) 82, 336-337 and Gatesv. collier, 572 (Ca10 1980), stating that a prisoner need not wait until he is actually assaulted before obtaining relief.

Plaintiff argue that the defendants prison officials knowingly designated him to U.S. Penitentiary Beaumont which housed hostile inmates from the Baltimore, Maryland area.  Without seriously considering the possible risk to plaintiff's safety and fully exploring a remedy for plaintiff's serious safety needs.

Plaintiff argue that he has stated a cause of action under the cruel and unusual punishment clause of the Eighth Amendment by alleging that prison officials, with deliberate indifference, have exposed plaintiff to an unreasonable risk

of harm.   Defendant acted in a deliberate indifferent manner due to the fact that they knew of and disregarded an excessive risk to plaintiff's safety.   Indeed the defendants prison officials were aware of the facts from which an inference could be drawn that a substantial risk of serious harm exist. Despite plaintiff's request for another alternative or remedy than to simply be transferred to another U.S penitentiary in which housed inmates from the Baltimore, Maryland area, and constant complaints of being placed in "The Hole".   The defendants simply just did not adhere to plaintiff's serious safety needs and conditions of iinhuman confinement.   which ultimately placed plaintiff back in "The Hole" and plaintiff experienced cruel and unusual punishment as a direct result of the prison officials actions.  See; (Farmer v. Brenan) 511 U.S. 825; 114 S. Ct.2d 11970; 128 L .2d 811 (1994) A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.   The prison officials were subjectly aware of the risk which conctitute a diliberate indifference.   A prison official is deliberately indifferent when knows or should have known of a sufficiently serious danger to an inmate.  See Young v. Quinlan, 960 F.2d 351, 360-361 (Ca(1992).

Prison officials have duty to protect prisoners from violance at the hands of other prisoners.  Cortes-Quinones v. Jimenez-Nettleship, (CA1) 488 U.S. 823 (1988) see also Wilson v. seuter, (describing the protection [an inmate] is afforded aganist other inmates as a condition of confinement subject to the strictures of the Eighth Amendment).

Plaintiff argue that the defendant Harley G Lappin and Harrell

Watts has duty to over see the actions of prisons officials
when their actions are placed before him on appeal.
Therefore, the defendants Harley G. Lappin and Harrell Watts
is responsible for their actions and has shown a deliberate
indifference to plaintiff serious safety needs, along with
prison officials at U.S.P Terre Haute.

Plaintiff argue that he is entitled to the remedy of relief,
due to the facts that prison officials actions, clearly prove
a deliberate indifference to plaintiff's safety and has placed
plaintiff back in "The Hole" which constitutes a continuing
violation.  Which is being continued to this very day by other
prison officials and constitutes a continuing tort.  Plaintiff
argues that there seems to be no end to the defendants prison
officials recklessness.

Plaintiff argues that when the defendant aided U.S.P Terre
Haute prison officials in designating plaintiff to U.S.P
Beaumont in Texas, where hostile inmates from the Baltimore,
Maryland area were being housed, they knew or should have
known that plaintiff would be exposed to unreasonable risk of
harm.  Mainly due to the fact that after the situations that
occurred at (1) U.S.P Pollack, (2) U.S.P Coleman I, and (3)
U.S.P Atwater, where plaintiff experienced major problems in
each institution, the defendants should have been alterted to
the fact that a real problem exist.  And rather than designate
plaintiff to U.S. Beaumont where more hostile inmates from the
Baltimore, Maryland area were being housed, other remedies
should have been sought.

Plaintiff argue that he has a right to serve his prison
sentence in a federal prison, and thus, should not be forced

to a state prison where more often than not conditions are worse.

As stated in Deshaney v. Winnebago County Dept. of Social Service; it is undisputed that the treatment a prisoner receives in prison and the conditions which he is confined are subject to scrutiny under the Eighth Amendment contemporary standards of decency require no less.  Estelle v. Gamble, In Estslle, it was concluded that although accidential or inadvertent failure to provide adequate medical care to prisoners would not violate the Eighth Amendment, "dilberate indifference to serious medical needs of prisoners" violates the Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.

### Facts

Plaintiff argues the defendants Harley G. Lappin Director of The Bureau of Prisons and Harrell Watts Aministrator of National Inmates Appeals joined U.S.P Terre Haute prison officials who knowingly designated plaintiff to U.S.P Beaumont which housed inmates from the Baltimore Maryland area.  The defendants conciously and with malicious intent placed plaintiff in "The Hole" over eightteen month without a transfer as punishment as a direct result of plaintiff utilizing the administrative remedy process.  Plaintiff argue that on each occasion during intake interview he voiced an objection to prison officials as to being transferred to their prison.  Mainly due to the fact that inmates from the Baltimore Maryland were being housed there also.  Plaintiff

also voiced concerns about being placed in general population, as explained herein below;

(1) On 2/28/2004 plaintiff was escorted from general population and placed in "The Hole", due to the fact that inmates from the Baltimore maryland area wrote a note to the captain's office demanding that plaintiff be removed from general population. Threatening that if not serious bodily harm would be done to plaintiff. Prison officials at U.S.P Pollock transferred plaintiff to U.S.P Coleman I in Florida, after plaintiff spent seven months in "The Hole".    (2) Upon arrival at U.S.P. Coleman one, Plaintiff asked prison staff during the intake interview were any inmates from the Baltimore Maryland area housed there, and the response was yes. Plaintiff expressed concerns as to why was he designated to that U.S.P. knowing that inmates from Baltimore Maryland area were housed there. Concerns about being placed in general population due to safety issues were brought to the attention of the intake staff. Plaintiff was placed in "The Hole pending a captain's review. Thirty day latter plaintiff was placed in general population without an addidional or captains review. Immediately upon entering general population fifthteen inmates from the Baltimore Maryland area approached plaintiff and requested that he come to the recreation yard and bring any papers that would prove he was not an informant. An argument broke out which led to an assault and plaintiff was placed back in "The Hole", on the basis of a heated argument or an assault. Nine months later prisons officials transferred plaintiff to U.S.P Atwater in California.    (3) Upon arrival at U.S.P Atwater in California plaintiff again

asked Captain Morehead whom conducted the intake interview were there any inmates from Baltimore Maryland area there, the response was yes. Plaintiff expressed concerns as to why they would consistently designate him to U.S.P's that house inmates from the Baltimore Maryland area. Plaintiff made captain Morehead totally aware of the events tha transpired at the prior two U.S.P's and that he did not feel safe around inmates from The Baltimore Maryland area. The captain suggest that plaintiff go out into general population an see what happens, if plaintifffeels any negative vibes just let an officer know. The captain stated that there were only a hand full of those inmates there at Atwater. Plaintiff was assigned a cell with an inmate from the Baltimore Maryland area. Two weeks later a muslim inmate from California was released from "The Hole", whom immediately recognized plaintiff from being at U.S.P Pollock. This inmate was friends with many of the inmates from the Baltimore Maryland area who were at U.S.P Pollock. He knew of the situation that occurred at Pollock as to plaintiff being thought of as an informant, and made the inmates from the Baltimore Maryland area at U.S.P Atwater of the situation which transpired in U.S.P Pollock. A few days later plaintiff's cell was was searched and a knife was retrieved, which the other inmate cocfessed that the weapon was his. A few days later plaintiff learned of a plan by the Baltimore, D.c, Philly, and some muslim inmates were planing to jump and stab plaintiff. Plaintiff was placed back in "The Hole" again, four monts later plaintiff was transfered to U.S.P Terre Haute in Indiana. (4) Upon arrival at U.S.P terre Hauet plaintiff voiced concerns and objected to being

designated there once it was made established  that baltimore
inmates were housed there during the intake interview.
Plaintiff was placed in "The Hole" again pending a captains
review.   Ten days later when Case manager Ramer was making his
weekly rounds in "The Hole" plaintiff asked ramer when did
plan to pull plaintiff out of the cell and to one conference
rooms and discuss his concerns.   Unit manager Ramer stated you
are being released to general population today come see me
when you are released to the unit.   Upon arrival to the
housing unit plaintiffmade every attempt to speak with unit
manager Ramer, but was short stopped by counselor Larson and
case manager Evans.   After explaining all conerns to Larson
and Evans they made it very clear that plaintiff would have to
stay in "The Hole" at the very least twelve to eightteen
months prior to being transfered.   At that point plaintiff
deemed it appropriate to assure his own safety taking into
account each prior incident, refused to stay in general
population.   Plaintiff exhausted all his administratives
remedies by filing the required BP-9, BP-10 and BP-11 with no
avail.   Which the final decision was within the defendant
Harrell Watts control, but rather than take steps to assure
reasonable measures would be taken to assure plaintiff's
safety needs were met.   The defendant simple joined in with
U.S.P Tere Haute prison officials and with deliberate
indifference place plaintiff in an unsafe enviornment.
Without even remotely considering the consequences to
plaintiff's safety or well being.   Plaintiff even sought the
assistance of Maryland state Senator and His Attorney whom
both wrote letters requesting a transfer to an institution

which did not house inmates from the Baltimore Maryland area
or to a prision that houses less hostile inmates.   But to no
avail the defendants position was to simply leave plaintiff in
the "The Hole" eightteen month before transfering the plaintif
f to one of the worst prisons in the BOP.   (5) Upon arrival at
U.S.P. Beaumont in Texas plaintiff did in fact make it clear
to the intake staff whom conducted the intake interview of his
concerns as to being transferred to that prison and why.
Plaintiff also explained that he had safety concerns as to
being placed in general population.   The special investigation
Lieutant told plaintiff to check in than because he did not
recognized an immediate threat to plaintiff.   Plaintiff also
voiced his concerns to a unit manager during the intake
interview whom advised plaint not to go out into general
population, Stating that "if I was you I would not go out in
general population because the inmates here at U.S.P Beaumont
do not fight they stab.   Rather than listen to that unit
manager who made sense, plaintiff went out into general
population and within hours was apppoached  and surrounded by
eleven inmates from the Baltimore area whom told him to get
off the compound.   One inmate told plaintiff the only reason
they did not stab plaintiff was that they just came off lock
down and the officers found all their knives.   Plaintiff still
refused to check in as they call it, but one of the
correctional officers whom witnessed the entire event assumed
that a problem existed and placed plaintiff in "The Hole".
Plaintiff remained in "The Hole" but was transfered three
times to different holdover prisons prior to being designated
to U.S.P. Big Sandy in Kentucky.   While in the last holdover

prison in Ocila Georgia plaintiff had an opportunity to speak an old friend whom was on his way back to U.S.P. Big Sandy. This long time friend advised plaintiff not to go out in general population at Big Sandy. Due to the fact that the inmates from Baltimore city there at Big Sandy were extremely hostile and most of them knew plaintiff and belived the Newspaper, and assured plaintiff that trouble would surely and immediately occur. (6) Upon arrival at U.S.P Big Sandy on 11/29/2008 during the intake interview plaintiff voiced his concerns to the Specials investigations lieutenant whom concluded that plaintiff's safety would be in question if he was released to generanl population. Even though plaintiff object to being placed in "The Hole", plaintiff was placed there as the only immediately remedy available. Plaintiff argue that prison officials here at Big Sandy are still not seeking another remedy, instead unit manager Chance and case manager Slone are simply seeking to transfer plaintiff just to get plaintiff out of their hair. Which is not considering the safety needs of the plaintiff. Therefore plaintiff has been in "The Hole" four years and four months as of the completion of this complaint 6/29/2008.

Thus, plaintiff argues that the defendants prison officials is deliberately indifferent when he knows or should know of a sufficiently serious danger to an inmate. Plaintiff argue that he met both the subject and objective standards due to the fact that plaintiff voiced his concerns at each prison during the intake interviews, as to the serious safety needs and being designated to that prison. Arguing that the current attitudes and conduct of the defendants prison officials at

this very minute is not in line with the (subjective) factors
which should be to prevent a substantial risk of serious
injury from ripening into actual harm.

Plaintiff argue that the defendants prison officials are
knowingly and unreasonably disregarding an (objectively)
intolerable risk of harm, and that they will continue to do
so.

Plaintiff argues that where plaintiff's suit is for redress of
the deliberate indiffernece of prison officials, such conduct
could not be thought to begin until the defendants learn that
plaintiff had a situation warranting attention yet
unreasonablly refused to provide that attention.  Until then,
the defendants had not violated his rights, and so his claim
had not accrued.  See Heard v. Sheahan 253 F.3d 316 (7th Cir
2001) (Prisoner's claim of failure to provide medical care
was timely, since cause of action accrued on last date of
alleged continuing deliberate indifference by jail officials
rather than date medical condition was discovered).
Plaintiff argue that the limitations period began to run upon
the date of defendants prison officials last refusal to
provide a remedy for plaintiff's serious safety needs and
inhumane conditions of confinement.  Since plaintiff claims
that defendants were deliberately indifferent to his serious
safety needs and conditions of inhumane confienment, such
conduct established the date of accrual of plaintiff's
complaint, defendants continuing violation thus did not accrue
as a cause of action until the violation was complete.
Plaintiff argue that the defendants refusal continued for as
long as the defendants had the power to do something about

plaintiff's situation, which was until he left the prison.
Every day that they prolonged the agony by not remeding
plaintiff's situation marked a fresh infliction of punishment
that caused the statute of limitations to start running anew.
A series of wrong acts creates a series of claims.  Palmer v.
Board of Edecation, 46 F.3d 682, 686 (7th Cir 1995); Webb v.
Indiana National Bank, 931 F.2d 434, 438 (7th Cir. 1991);
Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d
823, 828 (11th Cir. 1999); Kuhnle Bros., Inc. v. County of
Geauga, 103 F.3d 516, 522-23 (6th Cir. 1997).  Plaintiff seeks
to make it abundantly clear that the date of accrual was when
the plaintiff left U.S.P Terre Haute.  Rather than when
plaintiff began to seek the assistence of United State
Senators and his Attorney F. Pommett.

 Plaintiff argue that once he was transfered from U.S.P Terre
Haute to U.S.P Beaumont in Texas, the defendants prison
officials at U.S.P. Terre Haute tortious conduct ceased.
Therefore plaintiff's complaint is timely filed wihtin the
limitation period which began to run in either March, April or
May of 2007 when the defendants tortious conduct ceased.
Plaintiff argues that Bivens claims are also best
characterized as personal injury claims.  In 42 U.S.C.S 1983
suits as in other suits under federal law the answer is
furnished by federal common law rather than by state law.
Sellars v. Perry, 80 F.3d 243,245(7thCir. (1996); Wilson v.
Giesen, 9956 F.2d 738, 740 (1992).

The district court may perceive that the statute of
limitations began to run as soon as the plaintiff discovered
that he had situation that required attention, and this was

more than two years ago before he filed the complaint.   The
court should consider first whether this is an issue of state
or federal law.   The statute of limitations for suits under
Bivens and 1983 is supplied by state law -- not only the
limitations period but also the tolling rules.   Wilson v.
Garcia, 471 U.S. 261,275, 5 L.Ed. 2d 254, 105 S. Ct. 1938
(1985); Johnson v. Railway Express Agency, Inc., 421 U.S.
454,464, 44 K.Ed. 2d 295, 95 S. Ct. 1716 (1975).   Tolling
interrupts the statute of limitations after it has begun to
run, but does not determine when it begins to run; that
question is the question of accrual, Cada v. Baxter Healthcare
Corp., 920 F.2d 446, 450 (7thCir. 1991), and in Bivens,
section 1983 as in other suits under federal law the answer is
furnished by federal common law rather than by state law.
Sellar v. Perry, 80 F.3d 243,245 (7th Cir1996); Wilson v.
Giesen, 956 F.2d 738, 740 (7th Cir. 1992).   Plaintiff argue if
the disrtict court perceives that the date of accrual was when
the plaintiff discovered he had a situation that required
attention.   This would be incorrect due to the fact that
plaintiff's claim is an Eighth Amendment violation.   The suit
charges that the defendants inflicted cruel and unusual
punishment on the plaintiff by refusing to adhere to
plaintiff's serious safety needs and inhumane conditions of
confinements.
But what is a "continuing violation"? A violation is called
"continuing," signifying that a plaintiff can reach back to
its beginning even if the begining lies outside the statutory
limitationas period,  when it would be unreasonable to require
or even permit him to sue separately overy incident of the

defendants unlawful conduct. The injuries about which the plaintiff is complaining in this case are the consequence of a numerous and continuous series of events. See, M.H.D. v. Westminster schools, 172 F.3d 797, 804-5 (11th Cir.1999); Interamericas investments, Ltd. v. Board of Governers, 111 F.3d 376, 382 (5th Cir. 1997); Sable v. General Motors Corp., 90 F.3d 171, 176 ^th Cir. 1996); Rapf v. Suffolk County, 755 F.2d 282, 292 (2d Cir. 1985). When a single event give rise to continuing injuries, as in Sandutch v. Muroski, 684 F.2d, 252, 254 (3rd Cir. 1982)(per Curiam), the plaintiff can bring a single suit based on an estimation of his total injuries, and that mode of proceeding is much to be preferred to piecsmeal litigation despite the possible loss in accuracy. But in this case every day that the defendants ignored the plaintiff's request for a remedy increased his injury. It would be unreasonable to require him, as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after the earlier days of deliberate indifference. Numerous cases assume that a federal doctrine of continuing wrongs is indeed applicable to suits under 42 U.S.C. and Bivens Perry v. Sullivan, 207 F.3d 379, 383 (7th Cir 2000); 287 Corporate Center Associates v. Township of Bridgewater, 101 F.3d 320, 324 (3rd Cir 1996); Lavellee v. Listi, 611 F.2d 1129, 1132 (5th Cir 1980); Neel v. Rehberg, 577 F.2d 262, 263-64 (5th Cir. 1978); Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001).

Plaintiff concludes that the defendants Harley G. Lappin and Harrell Watts and U.S.P Terre Haute prison officials knew that

plaintiff faced a substanital risk of serious harm and
inhumane conditions of confinement but disregarded that risk
by failing to take reasonable measures to abate it.
In light of the fact that several effective remedies are
available to the defendants prison officials and they chose
none of them.  Rather they chose to over look the inevitable
and just simply transfer plaintiff to another prison which
houses hostile inmates from the Baltimore Maryland area.
Plaintiff argue that prison officials may not escape liability
for deliberate indifference by atempting to show that , while
they were aware of an obvious, substantial risk to the inmate
safety, they did not know the plaintiff was likely to to be
assaulted by a specific inmate in a certain prison.  For all
the reasons stated herein plaintiff implores this court to
grant the relief plaintiff has request.


Plaintiff James Elmer Gross, Sr. request judgement;
1. Against both defendants jointly in the sum of $400,000. for
compensatory damages
2. Against Harley G. Lappin Director of The Bureau of Prisons,
defendant (1) in his official capacity for the sum of
$200,000. for punitive damages
3. Against Harrell Watts Aministrator of National Inmate
Appeals, defendant (2) in his personal and official capacity
for the sum of $200,000. for punitive Damages.


Plaintiff argues that Haines v. kerner, 404 U.S. 519, 30 L.Ed.
2d. 652, 92 S.Ct. 594 (1972). must apply to his pro se
complaint.  However inartfully drawn must be held to lessor

standards than those drafted by an attorney.

Plaintiff Pray for a Jury Trial.

Plaintiff implores this honorable Court to allow amendment of this complaint as it may be deemed appropriate due to future developments.

James Elmer Gross, Sr

27361-037

U.S.P Big Sandy

P.O Box 2068

Inez, Kentucky 41224

6/29/2008

F
08-1246
HHK

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

James Elmer Gross, Sr.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (PC)

## DEFENDANTS

Harley G. Lappin, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

# 27361-037

Case: 1:08-cv-01246
Assigned To : Kennedy, Henry H.
Assign. Date : 7/18/2008
Description: Pro Se Gen. Civil

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZEN...
FOR PLAINTIF...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☒ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☒ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

O

| ☐ **G.** *Habeas Corpus/* *2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** $ 400,000   Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒NO   If yes, please complete related case form.

DATE 7/18/08   SIGNATURE OF ATTORNEY OF RECORD  NCD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

t:\forms\js-44.wpd

UNITED STATES DISTRICT COURT
FOR The DISTRICT OF Columbia
_____ DIVISION at _____

CIVIL ACTION NO. _____    (Court Clerk will supply)

James Elmer Gross, Sr.
    PLAINTIFF

VS:

Harley G. Lappin - Director
of The Bureau of Prisons (1)    (do not use "et al.",
        AND        enter full names)
Harrell Watts - Administrator
of National Inmate Appeals (2)
    DEFENDANTS

Demand for Jury Trial:
Yes ( ✓ ) No ( ___ )

I.    **Plaintiff:**

    A.    Name (list any aliases): James Elmer Gross, Sr.

    B.    Prisoner ID #: 27361-037  Check one: Convicted  ✓  Pretrial Detainee _____

    C.    Place of present confinement: U.S.P Big Sandy

    D.    Address: P.O. Box 2068 Inez, Kentucky 41224

II.    **Defendant(s):** (additional defendants may be listed on a separate sheet of paper)

    A.    Defendant's Name: Harley G. Lappin
        Title or Position: Director of The Bureau of Prisons
        Place of Employment: Central office 320 First st. NW, Washington, DC 20534

    B.    Defendant's Name: Harrell Watts
        Title or Position: Administrator of National Inmate Appeals
        Place of Employment: Office of General Counsel 320 First street, NW, Washington, DC 20534

C.    Defendant's Name: _____

       Title or Position: _____

       Place of Employment: _____

D.    Defendant's Name: _____

       Title or Position: _____

       Place of Employment: _____

E.    Defendant's Name: _____

       Title or Position: _____

       Place of Employment: _____

## III.  Statement of Claim:

Below you should state the **FACTS** of your case. You don't need to make legal arguments or refer to any cases or statutes.

If you wish to allege a number of related claims, write out each claim in a separate numbered paragraph. (If you need more space, you may attach extra sheets).

A.    What happened? Explain specifically what each Defendant did or failed to do.

The defendants Harley G. Lappin Director of The Bureau of Prisons is responsible for Plaintiff being transferred to five U.S Penitentiaries, And Harrell Watts Administrator of National Inmate Appeals is responsible for Plaintiff being transferred to U.S.P Beaumont, Which houses inmates from Baltimore City. Dispite having complete knowledge that Plaintiff was verified as requiring protective custody, from inmates who were from the Baltimore Maryland area. The defendants Act with deliberate indifference to Plaintiff's serious safety needs. The defendants placed Plaintiff in general population with reckless disregard for a substantial Risk of serious harm. Which ultimately Resulted in Plaintiff being placed and held in Administrative detention Well over Four years and Three months as of this 6/25/2008. The defendants have simply Transferred Plaintiff from one prison to another, subjecting Plaintiff to inhumane Conditions of Confinement, which amount to the willful, intentional infliction of Cruel and unusual punishment. The defendants have Knowingly and unreasonably disregarded an objectively intolerable Risk of harm.

and they are continuing to do so.

Plaintiff was prosecuted and convicted in the State of Maryland, City of Baltimore under the R.I.C.O Act, which received substantial media attention for at least two years, particularly in the Baltimore City, Md area. In which many articles printed in the Baltimore Sun Newspaper wrongly depicted plaintiff as being an informant for the federal government. Upon arrival at each prison, plaintiff make intake staff aware of his problems that exist with the inmates from Baltimore City and voiced concerns as to being placed in general population, due to the fact that inmates from Baltimore were being housed there. All of the prisons staff suggest that I be placed in general population except Big Sandy whom immediately placed plaintiff in Administrative detention pending a transfer.

The defendants only means of a remedy amount to the infliction of cruel and unusual punishment, due to the duration of the isolated confinement, and prison officials failure to implement another remedy for plaintiff's situation. Therefore the defendants has exposed plaintiff to additional forms of punishment not authorized by the criminal sentencing court.

B.     When did these events happen?

As to defendant (#1) Harley G. Lappin from 2/28/2004 until and continuing as of this present date.
As to defendant (#2) Harrell Watts from 6/27/2006 and is continuing as of this present date.

C.    Where did these events happen?

As to defendant (#1) HARLEY G. LAPPIN - CENTRAL OFFICE, U.S.P Coleman in Florida, U.S.P. Atwater in California, U.S.P TERRE Hautte in Indiana, U.S.P Beammont in Texas, U.S.P Big sandy in Kentucky, and U.S.P Pollock in Lowisianna.

As to defendant (#2) Harrell Watts - Central office and U.S.P Terre Hautte, U.S.P Beammont and U.S.P Big sandy.

D.    What rights under the Constitution, federal law, federal regulations, state law, or state regulations do you allege the Defendant(s) violated?  State the specific constitutional provision or law if you know it.

I believe The Eighth Amendment, Civil Rights Act aswell As others.

IV.    **Exhaustion of Administrative Remedies**

**A prisoner must complete all steps of the prison's grievance process before filing any lawsuit that relates to prison conditions.**

A.    **Federal Prisoners** answer the following:

1.    Did you file a grievance regarding the facts in this Complaint under Bureau of Prisons regulations?  YES ( ✓ )  NO (____)

2.    If so, did you (check **ALL** that apply):
   ✓    file a request or appeal to the Warden            12/6/2005 date
   ✓    appeal to the Regional Director                     3/26/2006 date
   ✓    appeal to the Office of General Counsel         5/2/2006 date

3.    **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

4.  What was the result? _At all three levels plaintiff was assured to be placed in a safe and healthy environment, but to no avail plaintiff was placed in another prison where his safety was at risk._

5.  If you did not file a grievance, why not? _____
_____
_____
_____

B.  **State Prisoners** answer the following:

1.  Did you file a grievance regarding these facts under Kentucky Department of Corrections CPP 14.6 or an appeal of a disciplinary decision to the warden under CPP 15.6?      YES (____)  NO (____)

2.  If you filed a grievance under CPP 14.6, did you (check **ALL** that apply):

_____ file a grievance and seek an informal resolution          _____ date
_____ request a hearing from the Grievance Committee          _____ date
_____ appeal to the Warden          _____ date
_____ appeal to the Commissioner          _____ date

Did you file an appeal of a disciplinary decision to the warden under CPP 15.6?
YES (____)  NO (____)          _____ date

3.  **ATTACH** a copy of each grievance or appeal form you filed and the prison's response(s) to each grievance or appeal.

4.  What was the result? _____
_____
_____
_____

5.  If you did not file a grievance, why not? _____
_____
_____
_____

C.    **County or City Prisoners** answer the following:

1.    Is there a grievance/appeal policy at your jail?    YES (___)  NO (___)

2.    **ATTACH** a copy of the grievance/appeal policy to your Complaint, if available.  If not, briefly describe the grievance/appeal policy below.

_____

_____

3.    Did you file a grievance regarding these facts?    YES (___)  NO (___)

4.    If you filed a grievance:

a.  What steps did you take to use the grievance process?  _____

_____

_____

_____

_____

b.  What was the result?  _____

_____

_____

c.  If unsuccessful, did you file an appeal?    YES (___)  NO (___)

d.  What was the result?  _____

_____

_____

e.  Did you take any further steps in the grievance process?

YES (___)    NO (___)    NO MORE AVAILABLE (___)

f.  What was the result?  _____

_____

_____

5.    If you did not file a grievance, why not?:  _____

_____

_____

_____

_____

V.    OTHER LAWSUITS

A.    Have you filed any other lawsuit **dealing with the same facts** raised in this action?
      YES ( ✓ )  NO ( ___ )

B.    If your answer to question A is **YES**, describe the lawsuit in the space below.
      If you filed more than one other lawsuit, provide the same information for each
      other lawsuit on additional sheets of paper.

      1. PARTIES:

      Plaintiff:    JAMES R. GROSS, sr.

      Defendant(s): UNKNOWN DIRECTOR OF THE BUREAU OF PRISONS,
                    Et AL.

      2. COURT:    (name the district for a federal court, or the county for a state court)
      EASTERN District OF KENTUCKY SOUTHERN Division Pikeville

      3. CASE NO.: 7:08-111-KKC    DATE FILED: 5/28/2008

      4. OUTCOME: (is the case still pending?  was it dismissed?  being appealed?)

      _____

      _____

      5. DATE OF JUDGMENT, DISMISSAL, or APPEAL: _____

C.    List any other lawsuits that you have filed in any state or federal court:

      1. Plaintiff JAMES R. GROSS, sr  vs. Defendant(s) Michael K. Nalley (1) unknown Designator (2)
      Court Name: U.S District Court Kansas City Kansas  Case No.: ?
      Nature of Claim: SAMR           Date Filed: 6/22/2008
      Outcome: Pending            Date: _____

      2. Plaintiff _____ vs. Defendant(s) _____
      Court Name: _____          Case No.: _____
      Nature of Claim: _____      Date Filed: _____
      Outcome: _____             Date: _____

3. Plaintiff _____ vs. Defendant(s) _____

Court Name: _____    Case No.: _____

Nature of Claim: _____    Date Filed: _____

Outcome: _____    Date: _____

## VI.    Relief:

State exactly what you want the Court to do for you. You don't need to make legal arguments or refer to any cases or statutes, just explain what you want to happen if you prevail on your claim.

①
AN INJUNCTION BARRING FUTURE CONFINEMENT IN ANY PENITENTIARY
Which houses INMATES FROM THE BALTIMORE MARYLAND AREA, ② AN
INJUNCTION BARRING FUTURE Administrative DETENTION AS A REMEDY
to plaintiff's SERIOUS SAFETY NEEDS ③ dAMAGES AND ④ A
CEASE AND DESIST ORDER AS to PRISON officials deliberate indifference
to plaintiff's SERIOUS SAFETY NEEDS.

## VII.    Review this Form

Please take a moment to go back and review your responses to each of the questions. Immediately below you are required to certify under penalty of perjury that the information you have provided in this form is correct to the best of your knowledge, so please make sure that your responses fully and accurately explain your claim.

## CERTIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_____ E. Gr, sr.                27361-037                _____
Signature of Plaintiff                Prison ID#                Date

Plaintiff's Address:    P.O. BOX 2068
                        INEZ, KENTUCKY 41224

Exhibit A

**Remedy #400634-F1**

PART B - RESPONSE

This is in response to your Request for Administrative Remedy receipted January 14, 2006, wherein you request information pertaining to which institution you will be designated to.

A review of your information is being completed to determine your placement at another institution. This encompasses a review by not only your Unit team, but the Special Investigations Office, as well. Once the report is completed, it will be routed for determination on your placement which will be commensurate with your security needs.

The Federal Bureau of Prisons, as well as the Federal Correctional Complex, Terre Haute, Indiana, is tasked with providing a safe and secure environment. You can be assured that your placement in general population at an institution commensurate with your security needs is the goal.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Gateway Complex, Tower II, 8th Floor, 4th & State Avenue, Kansas City, Kansas 66101. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____
Date

_____
Mark A. Bezy, Warden

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: GROSS, JAMES E     Z7361-037     SHM-212     U.S.P TERRE HAUTE
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** ON 11-28-05 I implored my unit team to supply me with AN inform resolution as to what steps are being taken to resolve my current problem and recurri problem, which involve assuring my safety as the B.O.P policy requires. The unit team did not directly respond to my request. Rather they danced around my primary objective by stating that no decision has been made as to whether I wil be transfered. My request was clearly stated as mentioned above... I have only one problem in which the entire unit team is extremely aware of...

My files should clearly display that I have been verified as a protectiv custody case, and why, at each of the three prior united states penteniaries in which I was designated. (SEE ATTACHMENT)

12-06-05
DATE                 SIGNATURE OF REQUESTER

**Part B– RESPONSE**

see attached

2-6-06
DATE                 WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE        CASE NUMBER: # 400634-F1

                                CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

1-14-06
DATE                 RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                                       BP–229(13)
USP LVN                                                  APRIL 1982

*Exhibit A-003*

*D/E*

*ZO 2- 204L*

*USP SHU*

Attachment 1
Page 2 (front)
THA-1330.13B

## U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.13, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.13, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

## ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM

INMATE'S NAME: *James Gross*     REG. NO.: *20361-037* UNIT: *E2*

DATE/TIME COMPLAINT RECEIVED FROM INMATE: *11-28-05    0800 am*

NATURE OF COMPLAINT: *I am Requesting a written Response as to what steps are being taken to Resolve my current and Recurring problem. I am not willing to discuss my situation through the door here in SHU for everyone to hear...*

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: *You do not state what problem you are referring to. If you mean your request for protective custody, no decision has been made. The unit team has completed the investigation portion, but no decision has been reached as to whether you will be transferred.    J. Evans, CM (E2) 12-03-05*

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION ATTEMPT: _____

_____

INFORMAL RESOLUTION **WAS ACCOMPLISHED**: _____

_____
                                        DATE

INMATE'S SIGNATURE: _____

SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
RESOLUTION

Attachment 1
Page 2 (back)
THA-1330.13B

*Exhibit A-003-a*

SECTION III.  (UNIT TEAM REVIEW)

INFORMAL RESOLUTION WAS NOT ACCOMPLISHED:  ( ) CHECK BOX

EXPLANATION FOR NON-RESOLUTION:  TO BE COMPLETED BY COUNSELOR

*See response from your unit team.*

_____

_____

_____ EXTENSION GRANTED ON:

_____

EXTENSION GRANTED BY: _____  NAME AND TITLE

CORRECTIONAL COUNSELOR'S SIGNATURE: *S/msair, CCC* *E-2*   DATE: *12-5-05*

UNIT MANAGER'S COMMENTS, ASSISTANCE, AND REVIEW: *S. Jussen for S.Ramer Acting*

_____

_____

_____

UNIT MANAGER'S SIGNATURE: _____  DATE: _____

DATE ADMINISTRATIVE REMEDY ISSUED: _____

DATE ADMINISTRATIVE REMEDY RECEIVED BACK FROM INMATE: _____

IS DTRIBUTION:

1.     IF COMPLAINT IS INFORMALLY RESOLVED BEFORE BEING RECEIPTED, CORRECTIONAL COUNSELORS SHALL MAINTAIN INFORMAL RESOLUTION FORM FOR FUTURE REFERENCE.

2.     IF COMPLAINT IS NOT INFORMALLY RESOLVED, FORWARD ORIGINAL INFORMAL RESOLUTION FORM, ATTACHED TO ADMINISTRATIVE REMEDY, TO

*Exhibit A - 004*

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Admin Remedy Number:**   400634-R2

This is in response to your Regional Administrative Remedy Appeal dated March 26, 2006, in which you indicate your life is in danger at your current facility, and you request a transfer to another facility where your safety can be assured.

We have reviewed your appeal and the Warden's response dated February 6, 2006.  Since the Warden's response, the investigation has been completed regarding your safety and you have been verified as requiring protective custody.  Your unit team has submitted you for transfer consideration to a facility which meets your security and safety needs.

As the action you requested is being processed by institution staff, this response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_4/26/06_
Date

Michael K. Nalley, Regional Director

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

_____          _____
DATE                                            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

APR 2 4 2006                                    SEE ATTACHED RESPONSE

_____          _____
DATE                                            REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _400634-R2_

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

_____          _____
DATE                                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

U.S. Department of Justice

Federal Bureau of Prisons

A-006.

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: GRESS JAMES E                Z-7361-C37        E-Z         TERRE HAUTE
     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.          UNIT         INSTITUTION

**Part A—REASON FOR APPEAL** The Response to my BP-10 did not fully address my complaint. I requested to know what steps are being taken to remedy my problem and when. While waiting for a response from the region. I was notified that my unit team has recommended state prison placement as a remedy to this problem. I deem placing me in a state prison totally inappropriate. Upon arrival at a state prison I will immediately encounter new problems. Inmates will be asking me questions like where are you from, what case are you on, who are your co-defendants, why are you in our state prison being a federal prisoner. If I do not answer it will be a problem because they will assume I'm hiding something. If I do not have a state case from that state with court papers immediately I will be looked at as a snitch, hot or an informant. What will I say and what will I do? State placement is not the appropriate remedy. I must be placed in a federal prison that does not house Baltimore inmates or with the least amount or less hostile inmates from Baltimore City. I want to be house in a federal facility with adequate law materials Federal law. PLEASE RESPOND! I must be able to fight my case.

5/2/2006
DATE                                            SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____                    _____
DATE                                            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 401634-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN                    Printed on Recycled Paper

YF-007

**Administrative Remedy No. 400634-A1**
**Part B - Response**

You request to know what steps are being taken to ensure you are
safely housed in an appropriate prison.

Our review of this matter reveals both the Warden and Regional
Director have adequately addressed your concerns.  Staff have
conducted an investigation into the issues you raise.  A final
decision as to where you will be designated has not been made.
As has been stated in previous responses, every effort is being
made to ensure you are housed in a prison which affords you the
appropriate degree of safety and security yet is an environment
which has as few restrictions as practicable.

This response is for informational purposes only.

June 27, 2006
Date

Harrell Watts, Administrator
National Inmate Appeals